THE UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RONALD WASHINGTON

          Plaintiff,                          Case No. 06-12588

vs.

                                      HONORABLE PAUL D. BORMAN
                                      HONORABLE STEVEN D. PEPE

FREDA RANDALL-OWENS,  GERALD SOMERS,
ANDREW JACKSON, JEFFREY WHITE,
DARRELL STEWARD,CLARENCE POWELL,
ANN BAREWALDE,  RUTH INGRAM,
MS. B ALLEN, MS. D. LEWIS, MS. B. SMITH,
MARY BERGHUIS, ROBERT SIKKENGA,
MICHAEL SINGLETON, BONNIE LEWIS,
BRIDGET WILLIS,  PAM CUMMINGS,
AND PATRICIA CARUSO

          Defendants.
_____/


## REPORT AND RECOMMENDATION

On June 12, 2006, Plaintiff filed a complaint that alleges violations of his civil rights

pursuant to §§ 1983, 1985 and 1986, under the Eighth Amendment, claiming deliberate

indifference to his medical problems and deliberate endangerment to his life.   His claims

concern denial of access to his hearing aid, hearing aid batteries, hearing aid care kit,

prescription medications and an asthmatic inhaler during an asthmatic attack.  On September 15,

2006, he filed a first amended complaint alleging harassment, retaliation, conspiracy, deliberate

indifference and due process violations (Dkt. #7).  On March 7, 2007, Defendants filed a motion

for summary judgment on various grounds (Dkt. #66).  On July 9, 2007, Plaintiff also filed a

motion for summary judgment against Defendants Ann Baerwalde and Freda Randall-Owens (Dkt. #96).[1]  All pretrial matters were referred to the undersigned under 28 U.S.C. § 636 (b)(1) (Dkt. #5).  For the reasons indicated below, it is recommended that Defendant's motion be GRANTED and Plaintiff's motion be DENIED.

## I.    BACKGROUND FACTS

On February 12, 2003, Plaintiff alleges that Defendant Resident Unit Manager (RUM) Gerard Somers confiscated his hearing aid, hearing aid batteries, hearing aid care kit, tape player, asthmatic inhaler, prescription medications, personal hygiene items, winter coat, legal books and typewriter accessories (Dkt. #7, ¶ 1).  These items, if taken, were unseen by Defendant Somers as they were inside of Plaintiff's footlockers, which are supposed to be used strictly for legal materials (Dkt. #66, Ex. 1, Somers affidavit, ¶ 4).  Defendant Somers confiscated the footlockers because prisoners are required to have written authorization to have more than one footlocker.  Plaintiff provided this authorization the next day and two of the footlockers and their contents were given back to him.  *Id*. at ¶ 5.  The other two footlockers were significantly altered and taken as contraband, but the contents were given to Plaintiff to pack into garbage bags.  *Id*. at ¶

---

[1] As discussed in the text, Plaintiff's motion for summary judgment as it pertains to Defendant Ann Baerwalde is without merit, and it is RECOMMENDED that it be DENIED. Plaintiff's motion for summary judgment against Defendant Freda Randall-Owens is similarly without merit.  Plaintiff argues that he is entitled to judgment as a matter of law because Defendant Owens claimed in her affidavit that she received an e-mail from a Sandra Lee in medical records indicating that Plaintiff did not have a medical detail to have his hearing aid care kit in the housing unit, but that Plaintiff can find no record of a Sandra Lee working for the medical department.  On July 10, 2007, Defendants filed a response to Plaintiff's motion for summary judgment in which they provide evidence indicating that Sandra Lee changed her name to Sandy Osier, and is indeed a supervisor in the medical records office (Dkt. #98, Ex. 2). Accordingly, it is RECOMMENDED that Plaintiff's motion for summary judgment also be DENIED as it pertains to Defendant Freda Randall-Owens.

6. The two altered footlockers were later replaced with two new footlockers. *Id.*

Plaintiff also alleges that during this time he suffered an asthmatic attack and was deprived of his inhaler (Dkt. #7, ¶ 1). Defendant Somers did not witness Plaintiff suffering from symptoms or hear him complain of an asthmatic attack (Dkt. #66, Ex. 1., ¶ 8). Plaintiff filed grievance NRF-2003-02-164-19C against Defendant Somers (Dkt. #7, ¶ 1).

On March 6, 2003, Hearings Officer Ann Baerwalde conducted an administrative hearing about the items that Defendant Somers confiscated (Dkt. #7, ¶ 2; Dkt. #66, Ex. 2, Baerwalde affidavit, ¶ 3). "Some of the property was found to be stolen because the library markings had been altered. . . . Other excess legal materials were not shown to be reasonably necessary for specific matters of pending or contemplated litigation. The remaining property was returned to [Plaintiff] Washington." (Dkt. #66, Ex. 2, ¶ 5). Plaintiff alleges that Defendant Baerwalde did this because of a conspiracy with Defendant Somers (Dkt. #7, ¶ 2). Yet, Defendant Baerwalde states that she had no communication with Defendant Somers and did not conspire with him regarding this hearing (Dkt. #66, Ex. 2, ¶ 6).

Another hearing was held about Plaintiff's property on March 12, 2003 (Dkt. #7, ¶ 3). Defendant Resident Unit Manager Freada Randall-Owens conducted this hearing and did not find any of the items in question to be contraband and returned them all to Plaintiff (Dkt. #7, ¶ 3; Dkt. #66, Ex. 3, Randall-Owens affidavit, ¶ 3). Plaintiff alleges that Defendant Randall-Owens did not return all of the property and filed grievance NRF-2003-04-394-19A (Dkt. #7, ¶ 3).

Plaintiff alleges that between October 25, 2003, and July, 2006, Defendant Randall-Owens harassed, retaliated against and acted deliberately indifferent toward him by taking his property, including his hearing aid, hearing aid kit and hearing aid batteries (Dkt. #7, ¶ 4).

Plaintiff alleges further that Defendant Health Unit Manager Ruth Ingram conspired with Defendant Randall-Owens during this time to withhold hearing aid batteries (Dkt. #7, ¶ 6). The hearing aid, hearing aid batteries and hearing aid care kit were confiscated on October 25, 2003, but the hearing aid was returned two days later (Dkt. #66, Ex. 3, ¶ 5-7). The extra batteries and care kit were also returned after Defendant Randall-Owens conducted an administrative hearing, but they were subsequently re-confiscated because Plaintiff never obtained the medical authorization required to have these items in his cell. *Id.* They were instead kept in the medical unit for his use upon request. *Id.* at ¶ 10. Additionally, Defendant Randall-Owens instructed Plaintiff that he needed to contact the medical staff directly in order to obtain new batteries. *Id.* at ¶ 9. Plaintiff filed grievances NRF-2003-10-1214-12Z and NRF-2004-04-455-12D-2 (Dkt. #7, ¶ 6.

On October 26, 2003, Defendant Randall-Owens "issued a major misconduct ticket to Plaintiff because he had 48 packets of laundry detergent and 25 packets of bleach" (Dkt. #66, Ex. 3, ¶ 7). These items are considered dangerous contraband by Operating Procedure 04.07.112 and were confiscated. *Id.* Defendant Randall-Owens typed the misconduct ticket on a computer using a template found in the MDOC forms directory. *Id.* at ¶ 8. The major misconduct ticket was not processed because Hearings Officer Adam Douglas contacted MDOC to make sure that the computer version of the form was acceptable. *Id.* MDOC preferred that corrections officers continued to use the paper forms instead, so Defendant Randall-Owens rewrote it on the standard paper form. *Id.* Yet, Defendant Deputy Warden Jeffrey White removed the ticket because it had not been reviewed with Plaintiff within 24 hours. *Id.*

During this period, from October 25, 2003, to July, 2006, Plaintiff filed grievances NRF-

2003-02-1391-17B, NRF-2003-12-1402-28A, NRF-2003-11-1295-17B, NRF-2003-11-1338-17B, NRF-2003-12-1392-07Z, NRF-2004-02-126-17B, NRF-2004-04-478-17Z and NRF-2004-06-807-07Z (Dkt. #7, ¶ 5).

On May 11, 2004, Defendant Clarence Powell held an administrative hearing. *Id.* at ¶ 7. Plaintiff alleges that the hearing involved property taken on October 25, 2003, but Defendant Powell avers that it was actually about property confiscated on January 22, 2004 (Dkt. #66, Ex. 4, Powell affidavit, ¶ 3). Plaintiff alleges that Defendant Powell conspired with Defendant Randall-Owens in conducting the hearing (Dkt. #7, ¶ 4), but Defendant Powell and Defendant Randall Owens assert that they did not have any communication about the hearing (Dkt. #66, Ex. 4, ¶ 4; Ex. 3, ¶ 12). Plaintiff also alleges that Defendant Powell refused to return the property afterwards that was not found to be contraband (Dkt. #7, ¶ 7). Defendant Powell states that some of the property was found to be contraband, but that the rest was returned to Plaintiff (Dkt. #66, Ex. 4, ¶ 3). Plaintiff filed grievance NRF-2004-06-824-07E (Dkt. #7, ¶ 7).

Plaintiff alleges that the preceding incidents caused him to come into "severe physical and emotional conflict with the prisoner population" because they feared that they would be harassed and retaliated against for being around him. *Id.* at ¶ 9. Plaintiff claims that Defendant Warden Andrew Jackson, Defendant Deputy Warden Jeffrey White, and Defendant Assistant Deputy Warden Darrell Steward knew of the retaliation and harassment against him and failed to stop it. *Id.* at ¶ 8. Defendant Steward was assigned as the Step I grievance respondent to investigate Plaintiff's two grievances, NRF-2004-02-0126-17B and NRF-2004-04-0478-17Z (Dkt. #66, Ex. 5, Steward affidavit, ¶ 3). Defendant Steward states in his affidavit that he was not reasonably able to determine from those grievances that Plaintiff was the victim of

harassment and retaliation by staff. *Id.* at ¶ 4. Mound Warden Jackson avers that all violations of policies forbidding harassment and retaliation against prisoners would be reported to Defendant Jackson's office by the Deputy Wardens (Dkt. #66, Ex. 6, Jackson affidavit, ¶ 3). He asserts that no such violations were reported to Defendant Jackson. *Id.* at ¶ 4.

On Friday, July 20, 2004, Plaintiff spoke with Regional Administrator Barbara Bock about the alleged abusive treatment (Dkt. #7, ¶ 10). On August 2, 2004, he was transferred to the Riverside Correctional Facility in Ionia, Michigan. *Id.* Plaintiff believed that this transfer was retaliatory. *Id.* On August 26, 2005, Plaintiff was transferred again to Brooks Correctional Facility. *Id.* at ¶ 11.

On September 9, 2005, Defendant Quartermaster Barbara Allen wrote a contraband removal record and minor misconduct ticket in response to finding Plaintiff in possession of a badly altered radio (Dkt. #7, ¶ 12; Dkt. #66, Ex. 7, Allen affidavit, ¶¶ 4, 7). Defendant Allen asked Plaintiff for proof of ownership of the radio, but he was unable to provide documentation. (Dkt. #66, Ex. 7, ¶ 5). Defendant Assistant Resident Unit Supervisor Djuna Lewis conducted a hearing in response to the misconduct and contraband tickets and found Plaintiff guilty (Dkt. #7, ¶ 12). Defendant Lewis gave Plaintiff the option of sending the contraband home instead of having it destroyed (Dkt. #66, Ex. 8, D. Lewis affidavit, ¶ 5). Plaintiff requested an appeal, but the Request for Appeal was denied by Defendant Assistant Deputy Warden Bobbi Smith (Dkt. #7, ¶ 13). Defendant Smith denied the Request for Appeal because "ARUS Lewis conducted a reasonable investigation and could clearly determine that the radio and identification numbers had been altered and that Prisoner Washington provided no paperwork identifying it as his." (Dkt. #66, Ex. 8, ¶ 6). Plaintiff filed grievances LRF-2005-09-1200-27A, LRF-2005-09-1214-

28A, and LRF-2005-11-1501-28A (Dkt. #7, ¶ 13).

On November 23, 2005, Plaintiff filed grievance LRF 2005-12-1533-01F indicating that he believed that Business Manager James Bos was stealing from his prison account and failing to process his legal mail (Dkt. #7, ¶ 14). Grievance LRF-2005-11-1478-15Z was filed on December 5, 2005, with similar factual allegations. *Id*. On February 6, 2006, Plaintiff filed grievance LRF-2006-02-0180-28A against Defendant Warden Mary Berghuis for failing to stop Bos' alleged misconduct. *Id*. at ¶ 15. Defendant Berghuis placed Plaintiff on modified access, allegedly because of the prior complaint against Defendant Berghuis. *Id*. Defendant Berghuis reported that Plaintiff's placement on modified access was a result of repeated abuse of the grievance process (Dkt. #66, Ex. 9, Berghuis affidavit, ¶ 6).

On April 4, 2006, Plaintiff was transferred to the West Shoreline Correctional Facility. (Dkt. #7, ¶ 16). On April 5, 2006, while processing Plaintiff's transferred property, Defendant Corrections Officer Robert Sikkenga wrote a contraband removal record and a minor misconduct tickets because of altered property belonging to Plaintiff. *Id*. at ¶ 17. This property included a television, four tapes, one large mirror, nine pens, two extension cords, two prohibited cable cords, one set of headphones and four footlockers with expired legal materials (Dkt. #7, ¶ 17; Dkt. #66, Ex. 10, Sikkenga affidavit, ¶ 4). Defendant Sikkenga notified Plaintiff that these items were contraband because they were over the allowable amount, were not authorized by staff, or had been altered (Dkt. #66, Ex. 10, ¶ 5).

On May 15, 2006, Defendant Hearings Investigator Bonnie Lewis wrote a major misconduct ticket against Plaintiff for possession of dangerous contraband, two bottles of ink. (Dkt. #7, ¶ 18; Dkt. #66, Ex. 11, B. Lewis affidavit, ¶ 4). Plaintiff was subsequently put in

segregation for eight days; Plaintiff claims this was done because of the ink, but Defendant Bonnie Lewis stated that it was because of an independent major misconduct ticket (Dkt. #7, ¶ 18; Dkt. #66, Ex. 11, ¶ 5). On May 25, 2006, Plaintiff filed grievance MTF-2006-05-338-19A (Dkt. #7, ¶ 19). Plaintiff was found not guilty because the Hearings Officer was unable to determine that the liquid inside the bottles was in fact ink (Dkt. #7, ¶ 18; Dkt. #66, Ex. 11, ¶ 6). Because the identity of the liquid was still unknown and therefore could be potentially dangerous if allowed to be taken into Plaintiff's cell, Defendant Assistant Deputy Warden Wells asked Defendant Bonnie Lewis to write a Notice of Intent to Conduct an Administrative Hearing (Dkt. #66, Ex. 11, ¶ 7). On May 30, 2006, Defendant Assistant Resident Unit Manager Pam Cummings conducted the Administrative Hearing and found Plaintiff guilty of misconduct because the liquid was identified as ink and was determined to be dangerous contraband (Dkt. #7, ¶ 20; Dkt. #66, Ex. 12, Cummings affidavit, ¶ 3). Plaintiff was placed in segregation for two days (Dkt. #7, ¶ 20). Plaintiff alleged that it was a result of the hearing. *Id*. Defendant Cummings stated that the time in segregation was because of an independent major misconduct ticket (Dkt. #66, Ex. 12, ¶ 5). Plaintiff appealed the decision, but the appeal was denied by Defendant Assistant Deputy Warden Wells (Dkt. #7, ¶ 20).

Plaintiff claims that he brought the alleged violations to the attention of the office of Defendant MDOC Director Patricia Caruso and that they were not corrected (Dkt. #7, ¶ 21).

## II. ANALYSIS

### A. <u>Standard Of Review</u>

Under Fed. R. Civ. P. 56 summary judgment is to be granted if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has

interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not merely rely "upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

**B.** **Factual Analysis**

**1.** ***Due Process Claims***

Plaintiff claims that on February 12, 2003, Defendant Somers took his hearing aid, hearing aid batteries, tape player, asthmatic inhaler, prescription medications, personal hygiene

items, winter coat, legal books and typewriter ribbons. Defendant Baerwalde conducted an administrative hearing on this property and found some of it to be altered or excess legal material. The rest was returned to Plaintiff.

On March 12, 2003, Defendant Randall-Owens also conducted a hearing concerning other property confiscated from Plaintiff. Defendant Randall-Owens found that none of it was contraband, but Plaintiff claims that not all property was returned.

Plaintiff claims that between October 25, 2003, and July 2004, Defendant Randall-Owens again took his hearing aid, hearing aid batteries and hearing aid kit. An administrative hearing was held on May 11, 2004. Some of the property was found to be contraband, the rest was returned to Plaintiff.

Plaintiff claims that on September 9, 2005, Defendant Allen wrote a contraband removal record and took his radio because it was altered and ownership could not be verified. Defendant Djuna Lewis conducted the hearing and affirmed this finding. Defendant Smith rejected Plaintiff's request for another appeal. Plaintiff filed grievances against Defendants Allen, Djuna Lewis and Smith.

Plaintiff claims that on April 5, 2006, Defendant Sikkenga wrote a contraband removal record and confiscated property for being altered or in excess of the allowed limit. On May 30, 2006, Defendant Cummings conducted a hearing concerning the ticket for possession of contraband and found Plaintiff guilty. Plaintiff claims that he was found not guilty, but still consequently put in segregation for two days. Defendant Cummings stated that Plaintiff's placement in segregation was because of an independent major misconduct ticket

Plaintiff claims that on May 15, 2006, Defendant Bonnie Lewis improperly took his ink,

believing that it was caustic and therefore dangerous to the prison population. Plaintiff appealed this taking and was found not guilty, but claims that Defendant Cummings subsequently ordered the ink to be destroyed so that it was never returned to Plaintiff. Plaintiff was subsequently put in segregation for eight days. Plaintiff claims that this was in response to the major misconduct ticket issued by Defendant Bonnie Lewis for possession of the stolen caustic ink and forged documents. In fact, the evidence suggests that it was the result of an independent major misconduct ticket written by another corrections officer. On May 15, 2006, Plaintiff filed grievance MTF-2006-05-338-19A, to which he claimed to have not received a response. Yet, he received the response on July 13, 2006, signed by Defendants Wells and Singleton (Dkt. #66, Ex. 13, Wells affidavit, Att. A).

Defendant Berghuis placed Plaintiff on modified access because of his abuse of the grievance process. Plaintiff appealed this limitation to the Director of MDOC, but was rejected.

Plaintiff claims that he was denied due process in the above situations where his property was taken or his liberty was limited. In all cases where a person stands to be deprived of his life, liberty, or property, he is entitled to due process of law. This due process gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284 n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest

11

without due process of law." *Zinermon v. Burch*, 494 U.S. 113 (1990) (emphasis in original).

Assuming that Plaintiff's allegations are true for the purposes of this motion, and that the charges were motivated by a desire to harass or intimidate, such an assertion, without more, fails to state a viable due process claim. A prison inmate is not automatically denied due process by being falsely accused of a violation of prison rules, as long as the inmate is afforded the opportunity to rebut the charge at a hearing, as Plaintiff was here. *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Freeman v. Rideout*, 808 F.2d 949 (2nd Cir. 1986), *cert. denied*, 485 U.S. 982 (1988); *Banks v. Klapish*, 717 F. Supp. 520 (W.D. Mich. 1989). The remedy for a guard's false accusations is an administrative hearing, at which the prisoner has the opportunity to rebut the charge. *See Hanrahan v. Lane*, 747 F.2d 1137, 1141 (7th Cir. 1984). Plaintiff does not allege any unreasonable limitations in this process.

In *Parratt v. Taylor*, 451 U.S. 527 (1981), the Supreme Court held that an inmate's claim of property loss did not allege a violation of the Due Process Clause of the Fourteenth Amendment where the complaint did not claim that the deprivation of his property occurred as a result of an established state procedure, but was rather a random, unauthorized act, for which the State provided an adequate remedy. Similarly, Plaintiff has failed to allege in his complaint that the deprivation of his property was a result of an established procedure.

The holding of *Parratt* has been held to apply to liberty interests as well as property interests. *Zinermon*, 494 U.S. at 113; *Wilson v. Beebe*, 770 F.2d 578 (6th Cir. 1985). Therefore, to state a claim for deprivation of a liberty interest without the due process required by the Fourteenth Amendment, Plaintiff is required to plead not only the deprivation, but also the inadequacy of the state's post-deprivation remedies for redress of the deprivation. *Vicory v.*

*Walton*, 721 F.2d 1062 (6th Cir. 1984); *Watts v. Burkhart*, 854 F.2d 839 (6th Cir. 1988).

Because the Plaintiff's complaint in this case does not claim that the process for the appeal of

misconduct or hearings is inadequate, his complaint fails to state a claim on which relief can be

granted and must be dismissed.

Yet, even if Plaintiff had pleaded the inadequacy of procedures to appeal his misconduct,

his claims stemming from major misconduct administrative hearings conducted under Mich.

Comp. Laws § 791.251 would be subject to dismissal.  The sufficiency of these procedures was

discussed in *Branham v. Spurgis*, 720 F. Supp. 605, 608 (W.D. Mich. 1989):

> Michigan law provides effective remedies for review of prisoners' misconduct convictions and vindication of their right to due process in the disciplinary proceedings. Michigan statutory law, Mich. Comp. Laws § 791.254, provides for rehearing of prison disciplinary decisions on the ground, among others, that "the prisoner's due process rights were violated." *Id*. at § 791.254(2)(c). If a request for rehearing is ultimately unsuccessful, plaintiff has a right to judicial review in the state circuit court.  Mich. Comp. Laws § 791.255.  The circuit court has plenary powers to reverse the hearing decision on due-process grounds. *Id*. at § 791.255(4), (5); *see Khan v. Warden, Jackson Prison*, 128 Mich. App. 224, 340 N.W.2d 77 (1983). In a very real sense, the misconduct hearing is only the first step of a statutory scheme carefully designed to assure fair disciplinary procedures.

> The Michigan statutory review procedure goes far beyond the requirements of due process. Due process requires only that the state provide minimal notice and opportunity to be heard, *see Wolff v. McDonnell*, 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974), and that the decision be supported by "some evidence." *Superintendent, Mass. Corr. Fac. v. Hill*, 472 U.S. 445, 455, 86 L. Ed. 2d 356, 105 S. Ct. 2768 (1985). The Michigan courts, in contrast, will reverse misconduct convictions not only for violations of minimal due-process guaranties, but also for prejudicial violations of the more extensive requirements of state procedural law. Mich. Comp. Laws § 791.254(2)(b). Likewise, the Michigan courts require that the conviction be supported by "competent, material and substantial evidence on the whole record," *id*. at § 791.255(5), not merely by "some evidence." A prisoner's appeal to state circuit court, then, is more than adequate to vindicate federal rights. The Sixth Circuit has squarely held that such an appeal of administrative decisions to the state circuit court provides an adequate remedy for administrative violations of procedural due process for purposes of *Parratt v. Taylor*.  *Sewell v. Jefferson County Fiscal Court*, 863 F.2d 461, 468 (6th Cir. 1988).

Similarly, Plaintiff's claims that arise out of minor misconduct hearings are subject to dismissal. In an unpublished Sixth Circuit opinion, *Abdur-Rahman v. Settles*, No 87-1539, 1988 U.S. App. LEXIS 6448 (6th Cir. May 16, 1988), the Court dismissed the prisoner's claim that he was denied due process because his minor misconduct hearing was not conducted in accordance with departmental regulations on the basis of *Parratt* and *Wilson*, concluding that the prisoner's right to appeal the conviction of his minor misconduct to the assistant deputy warden was an adequate post-deprivation remedy under state law.

Plaintiff has not shown that these state procedures were inadequate in violation of his federal due process right. In *Wolff*, the Supreme Court held that prison disciplinary proceedings are not part of the criminal prosecution and, therefore, the full scope of rights due a defendant in a criminal proceeding does not apply. *Wolff*, 418 U.S. at 556. The Court set forth certain minimum procedures required for serious offenses that could result in loss of good time or punitive segregation; however, they would not be required for lesser offenses carrying lesser penalties such as loss of privileges. *Id.* at 562-572. Minor misconducts are lesser offenses within the meaning of *Wolff*. Conviction of a minor misconduct cannot result in segregation, cannot result in a change in security classification, cannot result in a loss of good time, cannot result in a loss of special good time and cannot result in a loss of disciplinary credits. *See*, Mich. Admin. R. 791.5515. Records of minor misconduct convictions are not kept in the prisoner's official record office file. Minor misconducts are, therefore, not used against a prisoner in parole hearings or classification screening.

In such a situation, Plaintiff is merely entitled to "some notice of the charges against him and an opportunity to present his views to the prison officials. . . .Ordinarily, a written statement

by the inmate will accomplish this purpose, although prison administrators may find it more useful to permit oral presentations. . . So long as this occurs, and the decision maker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied."

*Hewitt v. Helms*, 459 U.S. 460, 476 (1983).

The material filed by the Plaintiff establishes that Plaintiff consistently received written notice of his minor misconduct incidents and subsequently a fact-finding hearing. He also was able to file appeals to be heard by prison staff. The federal court is not the proper forum to complain of a decision of a hearings officer in an administrative hearing:

> When a state agency "acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate" ... federal courts must give the agency fact finding the same preclusive effect to which it would be entitled in the state's courts.

*University of Tenn. v. Elliott*, 478 U.S. 788 (1986) (*quoting United States v. Utah Constr & Mining Co.*, 384 U.S. 394 (1966)).

For the foregoing reasons, Plaintiff's complaint fails to state a valid claim of a violation of his due process rights.

### 2.    *Absolute and Qualified Immunity Bars Plaintiff's Claims*

### a. <u>Official Capacity Immunity</u>

Even assuming, *arguendo*, that this was the correct forum in which Plaintiff could bring his claims, Defendants are shielded from liability by the doctrines of qualified and absolute immunity. Under the Eleventh Amendment, a state is immune from suit brought in federal court by its own citizens or citizens of other states. *Papasan v. Allain*, 478 U.S. 265, 275 (1986); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). Federal court actions against agencies or instrumentalities of a state are also barred by the Eleventh Amendment. *Shaw v. State of Cal. Dept. of Alcoholic Beverage*

*Control*, 788 F.2d 600, 603 (9th Cir.1986). A suit against state officials, in their official capacities, is the same as a suit against the state itself and therefore is subject to the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 16667 (1985). Accordingly, all of Plaintiff's claims against Defendants in their official capacities are barred and should be dismissed.[2]

### b. Individual Capacity Immunity

Government officials who perform discretionary functions are also generally entitled to qualified immunity from individual liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is an affirmative defense and the plaintiff need not anticipate it in the complaint. *Gomez v. Toledo*, 446 U.S. 635 (1980). Once a defense of qualified immunity is asserted, the plaintiff must respond with "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if

---

[2] Plaintiff singles out Defendant Ann Baerwalde in his motion for summary judgment alleging that she falsely claims she is an Administrative Law Examiner. Yet, Plaintiff provides no evidence to support this contention. Defendant Ann Baerwalde has submitted sufficient records and affidavits to demonstrate that she is an Administrative Law Examiner (Hearings Officer) employed by the State Office of Administrative Hearings and Rules (Dkt. #98, Ex. 1; Dkt. #66, Ex. 2). Accordingly, Defendant Ann Baerwalde is entitled to absolute immunity as an Administrative Law Examiner. Plaintiff filed this civil rights action under 42 U.S.C. § 1983 against Ann Baerwalde, a Hearings Officer employed by the Michigan Department of Corrections. In *Shelly v. Johnson,* 849 F.2d 228 (6th Cir. 1988), the Sixth Circuit affirmed a decision of this Court holding that a Hearings Officer who was acting under Mich. Comp. Laws § 791.251-.255 was entitled to absolute judicial immunity in relation to actions taken in his capacity as hearings officer. Based on *Shelly*, Plaintiff's motion for summary judgment is **DENIED** as it pertains to Defendant Ann Baerwalde.

proved, will overcome the defense of qualified immunity." *Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995). A Court faces a two part test when ruling upon a qualified immunity issue. The initial inquiry must be whether, considered in the light most favorable to the party claiming injury, the facts establish that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). If the facts alleged would violate a constitutional right, the second question is whether that constitutional right was clearly established at the time. *Id.*; *Summar v. Bennet*, 1957 F.3d 1054, 1058 (6th Cir. 1998).

In the present case, Plaintiff sues Defendants on a theory of deliberate indifference, harassment, retaliation and conspiracy. Yet, for the reasons noted below, Plaintiff fails to establish that any Defendant has violated a clearly established constitutional right.

### A. **Deliberate Indifference**

Plaintiff alleges that on February 12, 2003, Defendant Somers confiscated and withheld Plaintiff's hearing aid and asthma inhaler. Plaintiff also claims that between October 25, 2003, and July, 2004, Defendant Randall-Owens was deliberately indifferent to the medical needs that resulted from his hearing impairment because she confiscated his hearing aid. Deliberate indifference to the serious medical needs of prison inmates constitutes the unnecessary and wanton infliction of pain violative of the inmate's Eighth Amendment rights. An inmate suing under an Eighth Amendment deliberate indifference theory must demonstrate that his medical needs were serious and that defendant acted with deliberate indifference to those serious medical needs. *Estelle v .Gamble*, 429 U.S.

97, 104-105 (1976).  The Supreme Court has explained that deliberate indifference exists only when a defendant was aware of facts from which the inference could be drawn that a substantial risk of harm exists and the defendant drew the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A medical need is serious if it has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Carter v. Chambers*, 408 F.3d 305 (6th Cir. 2005); *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).  As stated by the Sixth Circuit: "[k]nowledge of the asserted serious needs or circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994).  A defendant's knowledge of a serious risk of harm can be inferred from circumstantial evidence such as an inmate's exhibition of commonly known symptoms of a serious malady. *See Carter*, 408 F.3d at 312.

Plaintiff offers no evidence in his complaint to show that Defendant Somers knew of an excessive risk to Plaintiff's safety.  An "inadvertent or negligent failure to adequately protect [the plaintiff] does not constitute deliberate indifference." *Ribble v. Lucky*, 817 F. Supp. 653, 656 (E.D. Mich. 1993).  Plaintiff states, "Gerard Somers took my hearing aids, hearing aid batteries, hearing aid care kit, tape player for the hearing impaired, asthmatic inhaler (I had a asthmatic attack and denied medical attention), other prescription medications, [and] personal hygiene items. . . ."(Dkt. #7, ¶ 1).  The items taken from Plaintiff that day were inside his four legal footlockers.  Taking this allegation

as true, for the purposes of this motion, Plaintiff does not assert that Defendant Somers had any knowledge of the contents of these footlockers or their relation to Plaintiff's health care needs. Without this, there can be no showing of the requisite culpable state of mind for a deliberate indifference claim. Even if Defendant Somers was negligent in not examining the contents, "mere negligence on the part of prison officials is not sufficient to give rise to culpability under the eighth amendment." *Ribble*, 817 F. Supp. at 655. Further, Plaintiff made no assertion in his complaint that Defendant Somers witnessed the subsequent asthma attack or that he was the one who denied him medical care. Defendant Somers confirmed that he never witnessed Plaintiff suffer an asthma attack.

Plaintiff's allegations of deliberate indifference to his medical needs against Defendant Randall Owens are similarly inadequate. Plaintiff stated that Defendant Randall-Owens deliberately endangered his life by taking his hearing aid, "forcing [him] to isolate [himself] from the dangers within prison because [he] was unable to hear . . . [and] to miss seven meals . . . ." (Dkt. #7, ¶ 4). Defendant Randall-Owens asked Plaintiff for a Medical Detail or Special Accommodation Notice, which were necessary to keep such items in a cell, but Plaintiff did not provide these. Therefore, Defendant Randall-Owens without notice of a Medical Detail or Special Accommodation Notice – the normal means of demonstrating a legitimate medical need – did not possess "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

Considering these allegations in the light most favorable to the Plaintiff, the alleged facts do not satisfy the basic requirements of a valid Eighth Amendment

deliberate indifference claim.  Accordingly, Defendants are entitled to qualified

immunity against Plaintiff's deliberate indifference claims.

**B.**     **Harassment**

Plaintiff alleges that Defendant Randall-Owens harassed him between October,

2003, and July, 2004, by repeatedly confiscating his property and filing a false major

misconduct ticket.  Plaintiff alleges that Defendant Sikkenga and Defendant Bonnie

Lewis wrote false contraband removal records and major and minor misconduct tickets in

April, 2006.

Plaintiff is protected from cruel and unusual punishment under the Eighth

Amendment.  *Ingraham v. Wright*, 430 U.S. 651, 664 (1977).  This clause embodies a

constitutional limitation on the power of the states to punish those convicted of crimes.

Punishment may not be "barbarous" nor may it contravene society's "evolving standards

of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981); *Trop v. Dulles*, 356 U.S. 86,

101 (1958).  Yet, "[n]ot every unpleasant experience a prisoner might endure while

incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth

Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).  Allegations of verbal

abuse, threats, embarrassment, defamation or harassment by a guard are not cognizable

under 42 U.S.C. § 1983.  *Ivey v. Wilson*, 832 F.2d at 955; *Gaut v. Sunn*, 810 F.2d 923

(9th Cir. 1987); *Burton v. Livingston*, 790 F.2d 97 (8th Cir. 1986); *Freeman v. Trudell*,

497 F. Supp. 481, 482 (E.D. Mich. 1980).

These are precisely the types of conduct of which Plaintiff complained.

Therefore, Plaintiff's allegations do not support a civil rights action recognized in federal

court and should be denied.  *See Paul v. Davis*, 424 U.S. 693 (1976); *Studen v. Beebe*, 588 F.2d 560, 566 (6th Cir. 1978); *Walker v. Cahalan*, 542 F.2d 681 (6th Cir. 1976), *cert. denied*, 430 U.S. 966 (1977).

**C.**     **Retaliation**

Plaintiff alleges that Defendant Randall-Owens retaliated against him by taking his property and writing a "bogus" major misconduct ticket in response to Plaintiff's grievances against her.  In fact, Defendant Randall-Owens wrote the ticket because Plaintiff had 25 packets of bleach and 48 packets of laundry detergent, considered dangerous contraband, in his cell.   This ticket was dismissed not because the materials were not found to be dangerous contraband, but because of a procedural delay in the initial ticket being written in a computer format and the processed ticket hand written was tardy under the 24 hour period in which to review it with an inmate.   The other misconduct ticket on which Plaintiff was found not guilty was a May 22, 2006, taking of alleged contraband ink from his footlocker.  Here Plaintiff prevailed before the misconduct hearing officer because of a failure of proof that the item was ink, but a later contraband forfeiture hearing on June 15, 2006, determined it was ink and was contraband. Any property confiscated – be it detergent, bleach or ink –  was not in response to grievances, but because it was considered contraband by prison policy.

In order to establish unconstitutional retaliation, a plaintiff must demonstrate (1) that he engaged in protected conduct; (2) that the defendant took an adverse action against the plaintiff sufficient to deter a prisoner of ordinary firmness from continuing to exercise his unconstitutional rights; and (3) that a substantial and motivating factor for

the defendant's retaliation was the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999). Finally, the plaintiff must allege actual damages to state a claim for any constitutional tort. *Memphis Community School District v. Stachura*, 477 U.S. 299, 308 (1986).

The Sixth Circuit has held that when an inmate is guilty of misconduct, he fails to allege protected conduct:

> The district court properly dismissed Thomason's retaliation claim because Thomason pleaded guilty to the disciplinary write-up. If a prisoner violated a legitimate prison regulation, he is not engaged in constitutionally protected conduct, and cannot state a claim for retaliation. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

*Thomason v. Coble*, 100 Fed. Appx. 522, 523 (6th Cir. June 11, 2004).

Without alleging protected activity, Plaintiff fails to state a claim for retaliation.

In the present case, Plaintiff's conduct was in violation of prison policy. It was not constitutionally protected activity. In *Orebaugh v. Caspari*, the Eighth Circuit explained conduct in violation of prison policy is not protected because:

> [a]ny other rule would allow a prisoner to openly flout prison rules after filing a grievance and then bring a claim under § 1983 arguing that prison officials discipline him in retaliation for his filing a grievance.

*Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990) (*per curiam*).[3]

---

[3] Where a judicial determination in favor of an inmate in a §1983 action "would necessarily imply the invalidity of [the prisoner's] conviction or sentence," that action cannot be brought under §1983 unless the underlying conviction is reversed or otherwise overturned. *Heck v. Humphrey,* 512 U.S. 477, 487 (1994). Such matters can only be challenged by a habeas corpus action, not in a civil right action. This principle was also applied to inmate disciplinary findings of guilt. *Edwards v. Balisok,* 520 U.S. 641 (1997). Here, with regard to Plaintiff's two minor misconduct tickets resulting in guilty findings (the April 5, 2006, possession of contraband ink and the September 9, 2005, contraband radio), a ruling in Plaintiff's favor would necessarily imply the invalidity of his misconduct charges based on the same factual assertions. Thus, he has no §1983 cause of action regarding those grievances absent showing they were

In certain circumstances a bogus misconduct ticket and exposure to sanctions could be considered an adverse action sufficient to deter a person of ordinary firmness from continuing to exercise First Amendment rights. Yet, Plaintiff notes two major misconduct tickets – one dismissed on a procedural delay problem and the other because of failure of proofs – proofs later established at a forfeiture hearing over the ink. These assertions fall short of misconduct tickets that could form the basis for a retaliation claim. A contraband policy and a disciplinary system are central to any corrections department's ability to control and manage a dangerous population of convicted felons. As held in *Turner v. Safley*, 482 U.S. 78, 84-89 (1987), prison officials may permissibly infringe on an inmate's constitutional rights, including First Amendment rights, if the infringement is rationally related to legitimate penological objectives. The prison disciplinary system is at the heart of prison official's array of management tools. To limit this ability would deter prison officials from issuing valid misconduct tickets. It would seriously undermine prison discipline, be a fount of litigation and seriously disrupt the ability of prison officials to provide reasonably safe and secure prisons. These legitimate penological concerns justify any minor chilling effect caused by writing these two misconduct tickets. Considering the allegations in the light most favorable to Plaintiff, he has still failed to assert facts on which a retaliation claim can be based because his conduct was not protected and Defendants' actions were justified because they were directly related to the protection and safety of the prison population. Accordingly, Defendants are entitled to qualified immunity against Plaintiff's retaliation claims.

---

reversed or vacated.

Additionally, Plaintiff claims that his August 2 and 26, 2005, transfers between Brooks Correctional Facility and Riverside Correctional Facility were done in retaliation for his complaints to the Regional Administrator, Barbara Bock, regarding abusive treatment. Other than the temporal sequence of events, Plaintiff presents no credible evidence from which a fact finder could confirm Plaintiff's suspicions and speculation as to who ordered this transfer or why.

A prisoner has no inherent constitutional right to be housed in a particular institution. *Meachum v. Fano*, 427 U.S. 215, 224 (1976). In *Meachum*, the court determined that, after conviction, criminal defendants' liberty interests are extinguished to the point that the State is free to confine them in any of its prisons. *Meachum*, 427 U.S. at 224. Plaintiff does not have a constitutional right to select his place of confinement, nor does he have a justifiable expectation that he will be incarcerated in a particular prison. *Olim v. Wakinekona*, 461 U.S. 238 (1983). Such "programming needs" are matters strictly within the professional discretion of prison administrators. *United States v. Michigan*, 940 F.2d 143 (6th Cir. 1991). Transfers between prisons implicate no liberty interest created by the United States Constitution. Likewise, state law creates no liberty interest in remaining in a particular institution. Mich Comp Laws § 791.265; *Newell v. Brown*, 981 F.2d 880 (6th Cir. 1992).

Prison officials are afforded wide latitude in ordering transfers of prisoners. *Meachum*, 427 U.S. at 228; *Montanye v. Haymes*, 427 U.S. 236 (1976). Bare allegations of "retaliation" are insufficient to withstand summary judgment. *Frazier v. Dubois*, 922 F.2d 560 (10th Cir. 1990); *Murphy v. Lane*, 883 F.2d 106, 108 (7th Cir. 1987). Further, a

transfer made because of a prisoner's grievances and lawsuits is not necessarily unconstitutional if it serves a legitimate penological purpose. *Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995). In *Ward*, the plaintiff claimed that his lateral transfer to a less pleasant facility was done in retaliation for his frequent use of the grievance system and/or use of the courts and to dissuade him from voicing his complaints in the future. Noting that prisoners may be transferred "for whatever reason or for no reason at all," the Sixth Circuit stated that the "ability to transfer a prisoner who is interfering with prison administration and staff morale goes to the essence of prison management." *Id*. at 274. Furthermore, even if the transfer "had some effect on Ward's future filing of grievances," the transfer was permissible because it served the legitimate penological interest of preserving order in prison administration and staff morale. *Id.* Plaintiff asserts no motivation outside of these allowable bounds for his transfer to Brooks Correctional Facility. Therefore, Defendants are entitled to qualified immunity.[4]

### D.    Conspiracy

Plaintiff claims that Defendant Baerwalde conspired with Defendant Somers in taking his legal books and typewriter accessories on March 6, 2003. Plaintiff also claims that defendant Ingram conspired with Defendant Randall-Owens to withhold hearing aid batteries for eight months. Additionally, Plaintiff alleges that Defendant Powell conspired

---

[4] Neither the federal constitution nor the Michigan Department of Corrections creates an independent expectation of procedural protections in transferring an inmate between correctional facilities in the same state. Because Plaintiff has no recognized interest in remaining at a particular institution and because prison officials are afforded wide discretion in making such transfers to further their recognized penological interests, Defendants' actions do not constitute retaliation.

with Defendant Randall-Owens in holding a hearing on May 30, 2004, regarding property confiscated on October 25, 2003. Plaintiff's complaint offered no facts to support these claims.

For a 42 U.S.C. § 1983 conspiracy action, Plaintiff must demonstrate:

(1) the existence or the execution of the claimed conspiracy, (2) overt acts related to the promotion of the conspiracy, (3) some link between the alleged conspirators, (4) and . . . facts that the conspirators agreed to commit an act which deprived plaintiff of a right, privilege, or immunity secured by the constitution or by laws of the United States.

*Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988); *see also Vasquez v. City of Hamtramck*, 757 F.2d 771 (6th Cir. 1985).

"For a Section 1983 conspiracy to survive a motion for summary judgment, specific facts showing either the existence or the execution of the claimed conspiracy must be set forth by the Plaintiff." *Lepley*, 681 F. Supp. at 422.

Other than conclusory statements alleging conspiracy, the records lack a single fact supporting Plaintiff's claim that Defendants acted in concert with one another with the purpose of violating Plaintiff's constitutional rights. *See Moore v. Paducah*, 890 F.2d 831, 834 (6th Cir. 1989) (proof beyond mere speculation and conjecture required to prove civil conspiracy); *Pillette v. Detroit Police Dept*, 661 F. Supp. 1145 (E.D. Mich. 1987), *aff'd. without op.*, 852 F.2d 1288 (6th Cir. 1988) (requiring greater factual basis). Plaintiff has neither plead nor proffered sufficient facts which could support a finding of a constitutional deprivation. Plaintiff's allegations, taken in the light most favorable to him, fail to establish a valid § 1983 conspiracy claim.

Alternatively, because of ambiguities in the complaint, it is possible that Plaintiff may have brought his conspiracy action under 42 U.S.C. § 1953(3). Section 1985 gives a

right of action for damages to persons injured by an act done in furtherance of a conspiracy intending to deprive any person or class of persons of the equal protection of the law. To prevail on a claim under 42 U.S.C. § 1985(3), Plaintiff "must prove (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or deprivation of any right or privilege of a citizen of the United States." *Johnson v. Hills & Dales General Hospital*, 40 F.3d 837, 839 (6th Cir. 1994) *cert. denied*, 514 U.S. 1066 (1995). Therefore, the fundamental requirement to state a claim of conspiracy under §1985 is to "demonstrate 'some racial, or perhaps otherwise class-based animus behind the conspirators' actions.'" *Seguin v. Sterling Heights*, 968 F.2d 584 (6th Cir. 1992) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Plaintiff does not assert any racial or class bias and therefore does not satisfy the core element of a valid § 1985 conspiracy claim.

Plaintiff failed to meet the burden of proof required by either 42 U.S.C. § 1985(3) or § 1983. Both actions must be claimed with specificity, but Plaintiff's allegations are at best conclusory. There is no evidence of a conspiracy between Defendants, nor was Plaintiff deprived of any constitutional right. Because Plaintiff failed to establish that Defendants Baerwalde, Somers, Randall-Owens, or Powell engaged in a conspiracy, they are entitled to qualified immunity.

### E. Plaintiff failed to state any claims that included Defendants Willis or Singleton for Personal Involvement.

Plaintiff alleges that Defendants "Andrew Jackson, Jeffery White, and Darrell

Steward, knew of the retaliation and harassment, and had the authority to stop it, and failed to do so." (Dkt. #7,¶ 8). Similarly, Plaintiff claimed that "Defendant Patricia Caruso, failed to correct the violations after they were brought to the attention of her office." *Id.* at. ¶ 21. Taking these allegations as true, Plaintiff's allegations establish only that Defendants Jackson, White, Steward and Caruso were negligent or failed to exercise due care in addressing Plaintiff's concerns, and such actions do not rise to the level of a Constitutional violation. *Lewellen v. The Metropolitan Govt of Nashville, et al.*, 34 F.3d 345, 351 (6th Cir. 1994).

To state a claim under 42 U.S.C. § 1983, a Plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). A Plaintiff must make a clear showing that each named Defendant was personally involved in the activity that forms the basis of the complaint. *Rizzo v. Goode*, 423 U.S. 362 (1976). It is a well-settled maxim that pro se complaints are held to a "less stringent standard" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519 (1972). Yet, even under the less stringent standard, the complaint must allege facts sufficient to show that a legal wrong has been committed and that it was committed by the named defendants. Because Plaintiff has failed to allege any personal involvement of Defendants Willis or Singleton, they are entitled to dismissal.

**F.   Plaintiff's claims against supervisory personnel, Defendants Jackson, White, Steward, Berghuis and Caruso, are based on respondeat superior, which is not recognized under 42 U.S.C. § 1983**

Allegations premised on respondeat superior are foreclosed in 42 U.S.C. § 1983

actions. *Monell v. Dept of Social Servs,* 436 U.S. 658 (1978). The Sixth Circuit has held

that in order to impose liability on supervisory personnel, a Plaintiff must show more

than having brought offending conduct to the attention of supervisory officials.

> There must be a showing that the supervisor encouraged the specific
> incident of misconduct or in some other way directly participated in it.  At
> a minimum, a § 1983 plaintiff must show that a supervisory official at
> least implicitly authorized, approved and knowingly acquiesced in the
> unconstitutional conduct of the offending subordinate.

*Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.) *cert. denied*, 469 U.S. 845 (1984) (citing
*Hays v. Jefferson County*, 668 F.2d 869, 872-74 (6th Cir. 1982)).

Merely being aware of a prisoner's complaint and failing to take corrective action is

insufficient to impose liability on supervisory personnel under 42 U.S.C. § 1983. *Poe v*

*Haydon*, 853 F.2d 418, 429 (6th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989).

Similarly, proof of participation in the grievance process is not sufficient to show

personal involvement.  *Manney v. Monroe,* 151 F. Supp. 2d 976 (N.D. Ill. 2001).

Liability under § 1983 cannot be predicated on simple negligence. *Daniels v.*

*Williams,* 474 U.S. 327 (1986).  "It is obduracy and wantonness, not inadvertence or error

in good faith, that characterize the conduct prohibited by the Cruel and Unusual

Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  Accordingly, for the

actions of Defendants Jackson, White, Steward and Caruso to constitute cruel and

unusual punishment, their conduct "must involve more than ordinary lack of due care"

for Plaintiff's interests or safety.  *Id.*  Even if Plaintiff's allegation were accurate,

Defendants Jackson, White, Steward and Caruso would be  guilty of no more than simple

negligence and could not be liable under § 1983.

### G.	Statute of Limitations

Finally, some claims in Plaintiff's complaint are barred by the statute of limitations. In *Wilson v. Garcia*, 471 U.S. 261, 276-280 (1985), the Supreme Court held that the appropriate statute of limitations to be applied in all section 1983 actions is the state statute of limitations governing actions for personal injury. Subsequently, in *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986), *cert. denied*, 479 U.S. 923 (1986), the Sixth Circuit held that Michigan's three year statute of limitations for personal injury claims, MCLA § 600.5805(10), governs section 1983 actions when the cause of action arises in Michigan.[5] In the present case, because the causes of action arose in Michigan, the applicable standard is Michigan's three year statute of limitations for personal injury claims.

The only question remaining for the purposes of this motion concerns when Plaintiff's 1983 causes of action accrued. Although *Wilson* held that state law provides the statute of limitations in section 1983 actions, it also reaffirmed that federal law and not state law is relevant for the purpose of characterizing a section 1983 claim. *Wilson*, 471 U.S. at 268-71. Accordingly, federal law is used to determine "when the statute of limitations begins to run, that is, when the cause of action accrues." *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir.1991). The limitation period is triggered "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quoting

---

[5] MCLA 600.5805(10) provides as follows:

The period of limitations is 3 years after the time of the death or injury for all other actions to recover damages for the death of a person, or for injury to a person or property.

*Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir.1984)). For cases arising under section 1983, this court has looked to "what event should have alerted the typical lay person to protect his or her rights." *Id.* (citing *Conlin v. Blanchard*, 890 F.2d 811, 815 (6th Cir.1989)). Yet, the statute of limitations is tolled during the period of exhaustion of administrative remedies. *Brown v. Morgan*, 209 F.3d 595 (6th Cir. 2000).

In regards to the alleged events of February 12, 2003, Plaintiff filed a Step I grievance on February 12, 2003, a Step II grievance on February 24, 2003, and received the response to his Step III grievance on June 11, 2003. With regard to the Administrative Hearing held on March 5, 2003, Plaintiff filed a Request for Rehearing on April 3, 2003, and received its denial on July 8, 2003. As to the alleged events of March 12, 2003, Plaintiff filed a Step I grievance on April 8, 2003, a Step II grievance on May 21, 2003, and received the response to his Step III grievance on August 29, 2003. Because Plaintiff's complaint was not filed until September 11, 2006, the claims arising out of these alleged incidents are barred by the statute of limitations.

The events on these days gave rise to Plaintiff's alleged deliberate indifference, due process violation and conspiracy claims against Defendant Somers, due process violation and conspiracy claims against Defendant Baerwalde, and a due process violation claim against Defendant Randall-Owens. The three year statute of limitations on § 1983 actions had passed, even allowing for tolling while Plaintiff exhausted his administrative remedies. Accordingly, it is recommended that these claims be dismissed with prejudice.

## III.    RECOMMENDATION

For the following reasons, it is **RECOMMENDED** that Defendant's motion for summary judgment be **GRANTED** and Plaintiff's motion be **DENIED**. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs*., 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: July 31, 2007                                    s/Steven D. Pepe
Ann Arbor, Michigan                                 United States Magistrate Judge

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 31, 2007, I electronically filed the foregoing paper with the Clerk  Court using the ECF system which will send electronic notification to the following: <u>Christine M. Campbell,</u>  and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: <u>Ronald Washington, #213524, West Shoreline Correctional Facility, 2500 S. Sheridan Dr., Muskegon Heights, MI 49444</u>

<u>s/ James P. Peltier</u>
James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church St.
Flint, MI 48502
810-341-7850
pete_peltier@mied.uscourts.gov